## PROVIDENCE BANK *v.* DANIEL WILKINSON & others.

A. W. assigned three shares of the capital stock of a bank standing in his name to T., for the benefit of the creditors of A. W., but did not transfer them to T. upon the books of the bank. T. sold one of the shares to W. S. P., a creditor of A. W., then attached all three of the shares as the property of A. W., claiming that his assignment to T. was fraudulent and void. Subsequent to the attachment, T. and W. demanded of the bank leave for T. to transfer upon its books to W. the share sold by T. to W., which, on account of the attachment, the bank refused; whereupon W. commenced a suit at law against the bank for not allowing the share to be transferred to him, and for the dividends accrued thereon; T. claiming of the bank that the other two shares should be allowed to be transferred to him on the books of the bank, and that the dividends accrued on the same should be paid to him. Pending this suit and claim upon the bank, and pending the attachments, the bank filed a bill of interpleader against S. P., the attaching creditor, T., the assignee of A. W., and W., the purchaser from the assignee, praying that they might be ordered to interplead and settle their claims to said shares and dividends between themselves; offering to allow the transfer of said shares or to pay the value thereof, with the dividends accrued or accruing thereon, to whomsoever of them might be entitled. *Held*, upon demurrer, that the bill was, under such circumstances, maintainable by the bank.

DEMURRER TO A BILL OF INTERPLEADER. The bill, in substance, stated, that there were three shares in the capital stock of the plaintiff bank standing in the name of one Amasa W. Whipple, which, on the 10th day of August, 1853, were attached on a writ issued out of this court at the suit of the defendant, Padelford, against said Whipple, which writ is now pending,—that in the November preceding the attachment, the defendant, Trescott, had claimed the attached shares as assignee of Whipple, under a prior voluntary assignment for the benefit of creditors, and subsequent to the attachment, demanded leave of the bank to transfer on its books one of said shares to the defendant, Wilkinson, as purchaser thereof from him, which the bank declined to do on account of the attachment aforesaid,—that thereupon, at the March term of this court, 1854, Wilkinson commenced a suit against the bank for damages sustained by him in consequence of the refusal by the bank to permit the said share to be transferred, and for the dividends accrued thereon, which suit is now pending in this court,—that in the mean time several dividends have accrued on the shares, amounting in all to $16 per share,—that the bank were, and had always been, willing to transfer the shares and pay the dividends to the

rightful owner, had they known who were entitled to them, and hereby offered to transfer and pay the same as the court might direct; but that the defendant, Padelford, claims that the shares and dividends shall be retained for the benefit of his attachment,—Trescott, that two of them and the dividends belong to him, and Wilkinson, that one of them and the dividends belong to him ; that they have severally presented their claims therefor to the bank and threaten to sue, and Wilkinson to prosecute his suit already commenced for the value of said shares by way of damages for not transferring them according to their claims ; and that the bank is ignorant whether said shares and dividends justly belong to either of the claimants.

The bill concludes with a prayer that Padelford, Trescott, Wilkinson, and all others who may have a claim upon said shares and dividends, may answer, " and may interplead, settle and adjust their said demands between themselves," the plaintiff bank " being willing, and hereby offering to transfer said shares or to pay their market value with the dividends accrued thereon to such of the claimants or others to whom the same shall appear by right to belong, being indemnified; and that they may be at liberty to bring the same into this court, which they hereby offer to do, for the benefit of such of said parties or other persons who may be entitled thereto; and that said defendants, and each of them, might be restrained by injunction from further proceedings at law for said shares and dividends or any part thereof, or for damages for refusing to allow a transfer of the same," and for further relief.

The bill was accompanied by the usual affidavit, &c., that the bill was filed by the bank without collusion with either party.

The subpœna was duly served on Padelford, Wilkinson, and Trescott,—the two former of whom answered, and the latter demurred specially to the bill. Padelford, in his answer, set forth his debt due from Whipple, his attachment of the three shares standing on the books of the plaintiff bank in Whipple's name, and alleged, that the assignment, if any such existed, from Whipple to Trescott, was made with the deliberate intent to delay and defraud Whipple's creditors.

Wilkinson, in his answer, set up his title to one of said shares under his purchase from Trescott, averring Trescott's title, under an assignment made by Whipple to him in 1849, in which, as he averred, all Whipple's creditors acquiesced from 1849 to 1853,— his repeated demands of the bank to transfer said share to him upon due exhibition to them of his title thereto, and the commencement and pendency of his suit against the bank to recover damages against them for their refusal to make the transfer, substantially admitting the facts as stated in the bill.

The defendant, Trescott, demurred to the bill, assigning as causes—

1st. That he was not a party to any suit pending between the bank, Padelford, and Wilkinson.

2d. That he had no interest in any litigation that was pending between said parties.

3d. That there was no privity of title or interest between himself and said parties, or between Padelford and Wilkinson, or between the bank and the two others, which can be determined by the like state of facts, or be involved in the same issue, but that their rights and interests are several and independent.

4th. That the remedy at law for all parties is ample.

5th. That an interpleader tends to confuse the questions involved, and make the rights of parties to depend upon rights of others, and upon rules of proceeding which deprive them of legal remedies.

6th. That interpleader deprives him of his witnesses by making them parties.

7th. That interpleader produces confusion in the obtaining of his just rights.

*Manchester* argued the points set forth by him as causes of demurrer.

*Hayes,* for the complainant, in his brief, submitted to the court by Mr. Matthewson in his absence from illness, quoted upon the points made by Manchester, *Richard* v. *Salter,* 6 Johns. Ch. R. 445; *Morgan* v. *Marsack,* 2 Mer. 107; *Fairbrother* v. *Prattent,* 1 Daniel, 64; *Angell* v. *Hadden,* 15 Ves. 244; *Langston* v. *Boylston,* 2 Ves. Jr. 101; *Atkinson* v. *Monks,* 1 Cowen,

43 *

703 ; *Bedell* v. *Hoffman,* 2 Paige, 199 ; *Bedeau* v. *Rogers,* ibid. 209 ; *Shaw* v. *Coster,* 8 ·Paige, 339 ; *Duke of Bolton* v. *Williams,* 2 Ves. Jr. 138, 152 ; *Dungey* v. *Angove,* ibid. 310 ; *Martinius* v. *Helmuth,* Cooper, 248 ; *East India Co.* v. *Edwards,* 18 Ves. 376 ; Story's Eq. Pl. §§ 291, 292 ; Story's Eq. Jurisp. §§ 807, 808, 814 ; Story's Bailments, §§ 110, 112 ; and as to costs, *Dunlop* v. *Hubbard,* 19 Ves. 205 ; *Denson* v. *Hardcastle,* 1 Ves. Jr. 368 ; 2 Barb. Ch. Pract. 125, 126, 333.

Ames, C. J.   Three shares of the capital stock of this bank are certainly claimed by the defendant, Padelford, to have been duly attached by him as the property of Whipple, and by the other two defendants, to have been, at the time of the attachment, the property of the defendant, Trescott, by virtue of a prior voluntary assignment made to him by Whipple for the benefit of the latter's creditors.   We do not know what is meant by the assertion in support of the demurrer. that there is no privity between Trescott and Wilkinson, when the latter claims one of the shares in controversy by virtue of an alleged purchase of it from the former ; nor by the suggestion that there is no privity between the bank and the defendants Trescott and Wilkinson, when both,·in opposition to Padelford's attachment, claim that it is the duty of the bank to recognize one of them as the owner of two shares of the assigned stock, and the other as the owner of one share, by virtue of their relation to the bank of inchoate stockholders.

The truth is, that the attaching creditor sets up Whipple's title against the bank, and the assignee of Whipple, Trescott, and the purchaser from him, Wilkinson, set up Trescott's title to this stock, and the bank is attacked, or threatened to be attacked, or has reason to fear that it will be attacked, by all three.   It is true, that Trescott and Wilkinson, as against Padelford, are not joint claimants of the three shares attached by him ; but distinctly claim, as stated in the bill, the former, two of them, with their dividends accrued and accruing, and the latter, one of them, with its dividends accrued and accruing.· If, however, in a bill to be brought by a purchaser of these shares under Padelford's execution to set aside the assignment, under which both claim, as fraudulent and void, they may and

must be joined, we see no more objection in joining them in this interpleading bill, as representing the whole interest in these shares and dividends, in opposition to Padelford, for the purpose of trying the same question as to the assignment, and no greater danger of confusion is likely to arise in such a trial from their joinder. The bill states, which is all that we have to do with on this demurrer, that Padelford claims these shares and the dividends accrued and accruing, by virtue of his attachment, and Trescott and Wilkinson, the same shares and dividends, by virtue of Whipple's anterior assignment. It is admitted, therefore, by the demurrer, that the same subject is in controversy between these parties, and the bank seems to be the object, or threatened object, of attack of all three, itself having no interest whatever in the contested question, which of the three shall prevail. We cannot see that this state of things has been produced by any fault of the bank, or that it has in any way so recognized the title of, or obliged itself to either party, as to preclude it from calling upon the court to compel all three to contest between themselves, and at their own cost, a matter, in which it stands perfectly indifferent, and by the result of which it ought to be wholly unaffected.

Another objection to the bill, stated on the part of Trescott under this demurrer, that he is no party to any suit, nor has an interest in any suit now pending between the other parties to the bill, cannot avail him. He certainly is alleged by the bill to claim, and to threaten suit against the plaintiff as a claimant of, two shares of this stock under Whipple's assignment; and the very suit now pending against the bank for not transferring one share of the stock, was caused by an assertion of his title in assigning it to a purchaser, the plaintiff in that suit. Having caused one suit, and admitted that he threatens another in support of the title attached by Padelford, he has no reason to complain, if made a party to this bill in relief of the mere stakeholder, thus attacked by one suit through his agency, and now threatened with another by him.

The last objection insisted upon at the argument, that the remedy at law is sufficient for all parties, is, considering the subject of contest, fraud in an assignment for the benefit of

creditors, hardly tenable as to any of them; a court of equity being the very forum in which such a question can best be litigated. But however this may be, we cannot see its application to the maintenance of this bill as an interpleading bill. The question now is merely, does the bill state a case in which the defendants ought to be compelled to interplead in relief of the plaintiff? the forum in which they shall litigate, under this bill, whether at law or in equity, to be a matter of after consideration. This answers all the other objections to the bill,— such as loss of evidence, and supposed confusion from the change of forum, etc., even if they had an existence; since the court always takes care in such a case, as it has the power to do, that no right or equitable privilege of trial is lost, by its interference, to any party.

This demurrer must be overruled, and the defendant, Trescott, ordered to answer the bill.